IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROSA DURAN,

        **Plaintiff,**

vs.                                                      No. CIV 03-0181 LCS/KBM

**EAGLE QUICK MART,
DAVE McCALLISTER and
ED HAYES,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 12), filed on May 28, 2003. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), and having considered the Motion, briefs, relevant law, and being otherwise fully advised, finds that this Motion is well-taken and should be **GRANTED**.

**I.      Background.**

Plaintiff, a female of Mexican national origin, alleges that Eagle Quick Mart (hereinafter "Eagle") employed her as a convenience store clerk. (Compl. ¶¶ 5-7.) Plaintiff contends that in January 2002, management of the store location where Plaintiff was working was taken over by Defendant Hayes, an Anglo male, and Plaintiff began working with a new manager, Defendant McCallister, an Anglo male. (Compl. ¶ 10.) Plaintiff alleges that McCallister made racially derogatory remarks about persons of Mexican national origin in general and Plaintiff in particular. (Compl. ¶ 11.) McCallister also threatened to fire Plaintiff. (*Id.*)

Plaintiff complained about the derogatory comments to Defendant Hayes during the last week

of January 2002.  (Compl. ¶ 14 .)  During the first week of February 2002, Hayes called a meeting with Plaintiff and McCallister.  (Compl. ¶ 15.)  McCallister admitted to calling Plaintiff and other Hispanic workers "Mexicans," and Hayes advised him to refer to them as "Hispanics."  (Compl. ¶ 16.)  When McCallister disagreed and insisted that the proper term was "Mexican," Hayes ended the meeting and held a private meeting with McCallister.  (Compl. ¶ 17.)  After meeting with McCallister privately, Hayes accused Plaintiff of stealing $200.00 from the cash register and threatened to fire her.  (*Id.*)  It was subsequently learned that the money was not missing, but had been misallocated because Plaintiff had been pressing the wrong button on the register.  (Compl. ¶ 18.)  The threat to terminate Plaintiff was rescinded.  (*Id.*)

After the February 2002 meeting, McCallister continued to make racially derogatory remarks about Plaintiff and others of Hispanic ethnicity.  (Compl. ¶ 19.)  Plaintiff complained about these remarks to Hayes and Beverly Enrique, District Manager, but neither Hayes nor Enrique would return Plaintiff's phone calls.  (*Id.*)  On April 5, 2002, Hayes, McCallister, and Enrique called Plaintiff to another meeting and offered to resolve her conflict with McCallister by transferring her to another store location.  (Compl. ¶ 20.)

On April 7, 2002, Plaintiff informed McCallister, Hayes, and Enrique that the transfer was not an acceptable solution because the other store location was four miles from Plaintiff's home, while the store where she was originally assigned was only one half of a mile from her home.  (Compl. ¶ 21.)  The transfer would deny Plaintiff the opportunity to walk or ride her bike to work.  (*Id.*)  Additionally, the transfer would not resolve the problem because McCallister also managed the other store location.  (*Id.*)  After Eagle scheduled Plaintiff to work at the other store location, she refused to return to work.  (Compl. ¶ 22.)  Plaintiff alleges that she was constructively discharged because

Defendants failed to take corrective action with respect to McCallister's derogatory statements and transferred her to the other store location. (Compl. ¶ 23.) Plaintiff alleges that Defendants transferred her in retaliation for objecting to the hostile work environment created by McCallister's racially derogatory remarks. (Compl. ¶ 24.)

On February 6, 2003, Plaintiff filed her Complaint in this Court on alleging national origin discrimination and retaliation in violation of Title VII, and supplemental state law claims for national origin discrimination and retaliation under the New Mexico Human Rights Act, breach of contract, and intentional interference with contractual relations. Plaintiff requests compensatory damages punitive damages, attorney fees, interest, and costs. Defendants move to dismiss Plaintiff's Title VII claims due to failure to exhaust administrative remedies.

**II.     Standard**

In ruling on a motion to dismiss, the court must accept all well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *See Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y*, 163 F.3d 1150, 1152 (10th Cir. 1998). Where a party challenges the facts upon which subject matter jurisdiction depends pursuant to Rule 12(b)(1), "'a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (*quoting Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). Reliance on evidence

outside the pleadings in addressing such a motion does not, as a general rule, convert the motion to one for summary judgment under FED.R.CIV.P. 56. *Sizova,* 282 F.3d at 1324; *see, e.g. Jones v. Runyon*, 91 F.3d 1398, 1400 (10th Cir. 1996) (holding that court should examine both plaintiff's administrative charge and district court complaint in assessing subject matter jurisdiction).

### III.     Analysis

Plaintiff alleges discrimination based on national origin and retaliation in violation of Title VII. Title VII makes it unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment on the basis of national origin. *See* 42 U.S.C. § 2000e-2(a)(1) (2002). Title VII prohibits retaliation against employees for asserting their rights under Title VII, providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2002).

Defendant argues that Plaintiff's Title VII claims are barred by failure to exhaust administrative remedies. Exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII. *See Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997); *Jones,* 91 F.3d at 1399. To exhaust administrative remedies, a plaintiff must timely file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5 (e) and (f)(1) (2002). The charge must be in writing, signed, verified and must contain a clear and concise statement of the facts. *See* 29 C.F.R. §§ 1601.9; 1601.12 (3) (2002). The purposes of the exhaustion requirement are to provide notice of the alleged violation to the charged party, and to provide the EEOC with the opportunity

4

to conciliate the claim.  *See Seymore*, 111 F.3d at 799.

Plaintiff admits that she last worked for Eagle on April 5, 2002.  (Stipulated Facts ¶ 1; Hayes Aff. at ¶ 1.)  On April 12, 2002, Plaintiff signed her first administrative charge of discrimination and filed it with the EEOC.  (Stipulated Facts ¶ 3.)  The EEOC received this charge on April 17, 2002.  (*Id*.)  In the April 12, 2002 charge, Plaintiff checked the box for national origin discrimination and stated in the "Particulars" section of the form:

> I am being subjected to a hostile working environment.
> I believe I have been discriminated against because of my national origin, Hispanic, in violation of Title VII of the Civil Rights [sic] of 1964 as amended for the following reasons: My current manager constantly refers to Hispanics in ethnically derogatory terms, thus creating and maintaining a hostile work environment.
> I have complained several times about this to the company.  The owner has talked to the manager and told him to stop, but that has not corrected the problem.

(Stipulated Facts, Ex. B.)

On July 2, 2002, the EEOC mailed Plaintiff a right to sue letter with respect to the April 12, 2002 charge.  (Stipulated Facts ¶ 5.)  Plaintiff did not file a lawsuit within ninety days of her receipt of the July 2, 2002 right to sue letter.  (*Id*.)

On July 22, 2002, Plaintiff filed her second administrative charge of discrimination with the New Mexico Human Rights Division ("NMHRD").  (Stipulated Facts ¶ 6.)  The NMHRD received this charge on July 25, 2002, and forwarded it to the EEOC.  (*Id*.)  In the second charge, Plaintiff checked the retaliation and national origin boxes.  (Stipulated Facts, Ex. D.)  However, the check mark on the retaliation box was crossed out.  (*Id*.)  In the second charge, Plaintiff stated in the "Particulars" section:

I        STATEMENT OF HARM:  On 5-28-02 I was forced to quit my job due to daily racial slurs from my supervisor.
II.      RESPONDENT'S REASON FOR ADVERSE ACTION:  No reason given.
III.     STATEMENT OF DISCRIMINATION:  I believe I have been discriminated against because

5

   of my National Origin (Mexican) in violation of Title VII of the Civil Rights Act of 1964 and
   in violation of the New Mexico Human Rights Act.

(Stipulated Facts, Ex. D.)

  On November 7, 2002, the EEOC mailed Plaintiff a right to sue letter on the July 22, 2002 charge. (Stipulated Facts ¶ 10.) Plaintiff filed the instant civil action on February 6, 2003. (Stipulated Facts ¶ 10.) It is undisputed that Plaintiff last worked for Eagle on April 5, 2002. (Stipulated Facts ¶ 1.)

  Title VII requires that a plaintiff claiming employment discrimination must file a complaint within ninety days of receipt of a right to sue letter. *See* 42 U.S.C. §2000e-5(f) (1); *Witt v. Roadway Express*, 136 F.3d 1424, 1429 (10th Cir. 1998). Plaintiff did not file suit within ninety days of the July 2, 2002 right to sue letter issued on her April 12, 2002 charge of discrimination. The allegations contained in the April 12, 2002 charge are therefore time-barred. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994) (plaintiff who timely filed suit on second EEOC charge was barred from asserting claims based on events that formed basis of prior EEOC charge that was not timely sued upon).

  Plaintiff filed suit within ninety days of the November 7, 2002 right to sue letter issued on the July 22, 2002 charge of discrimination. However, the July 22, 2002 charge was based on alleged constructive discharge due to daily racial slurs from her supervisor. It is clear that the second charge was based on the same facts as first charge. It is undisputed that Plaintiff last worked for Eagle on April 5, 2002. (Stipulated Facts ¶ 1.) A plaintiff cannot revive a time-barred claim by filing another administrative charge based on the same facts. *Spears v. Missouri Dept. of Corr. and Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000); *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2nd Cir.1986) (per curiam). A ruling that would allow a plaintiff to revive a time-barred claim by

filing a subsequent administrative charge would render the time limitations of 42 U.S.C. § 2000e-5(f)(1) meaningless. *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d at 828. Plaintiff's July 22, 2002 administrative charge did not extend the time limit for filing suit with respect to the July 2, 2002 right to sue letter on the April 12, 2002 charge. Because Plaintiff failed to bring suit within ninety days of the July 2, 2002 right to sue letter, Plaintiff failed to timely exhaust administrative remedies. Thus, Plaintiff's Title VII claims are barred by failure to timely exhaust administrative remedies. *See Seymore*, 111 F. 3d 799.

       Plaintiff argues that her second administrative charge raised a retaliation claim. This argument fails for at least three reasons. First, the check mark in the retaliation box was crossed out. While such failure to check the retaliation box is not dispositive of the exhaustion issue, it creates a presumption that Plaintiff was not asserting that claim. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). Second, the "Particulars" section makes no reference to retaliation. Thus, the *Gunnell* presumption was not overcome by the textual portion of the charge. Third, Plaintiff filed her first charge of discrimination on April 12, 2002, five days after she resigned.[1] Retaliatory acts that occurred prior to the filing of a charge of discrimination must be included in the charge to satisfy the exhaustion requirement. *Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999). Accordingly, Plaintiff's second charge did not exhaust a retaliation claim and did not serve to revive Plaintiff's time-barred Title VII discrimination claim. *See Spears*, 210 F.3d at 853.

       Plaintiff's Title VII claims are barred by her failure to exhaust administrative remedies.

---

[1] It is undisputed that Plaintiff resigned on April 7, 2002, and not on May 28, 2002. Indeed, Plaintiff concedes in her response brief that the May 28, 2002 date was an error.

Jurisdiction in this action was based solely on 28 U.S.C. § 1331 (2002) (federal question). The only federal questions were Plaintiff's Title VII claims. The Supreme Court has instructed that federal courts should consider the propriety of exercising supplemental jurisdiction "'in each case, and at every stage of the litigation.'" *Roe v. Cheyenne Mt. Conf. Resort*, 124 F.3d 1221, 1237 (10th Cir. 1997) (*quoting Carnegie-Mellon University v. Cohill*, 484 U. S. 343, 350, (1988)). Where federal claims have been dismissed, the Tenth Circuit has stated that "[t] he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice--that is the seminal teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966)." *Roe*, 124 F.3d at 1237.

The decision of whether to exercise supplemental jurisdiction is within the discretion of the district court. 28 U.S.C. § 1367(c) (2002). Pertinent factors in determining whether to exercise supplemental jurisdiction are (1) whether the claim raises a novel or complex issue of state law, (2) whether the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) whether the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, whether there are other compelling reasons for declining jurisdiction. *Roe*, 124 F.3d at 1237 (*citing* 28 U.S.C. § 1367(c)). In the instant case, Plaintiff's federal claims have been dismissed and the remaining state law claims predominate. Pursuant to 28 U.S.C. § 1367(c)(2) and (3), I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

**IV.   Conclusion**

The undisputed facts demonstrate that Plaintiff failed to exhaust administrative remedies with respect to her Title VII claims. I decline to exercise supplemental jurisdiction over Plaintiff's state

law claims. Defendant's motion to dismiss should be granted and the Complaint should be dismissed without prejudice.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 12), filed May 28, 2003, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that an Order dismissing this matter without prejudice shall issue forthwith.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
**BY CONSENT AND DESIGNATION**